The next case is Zeringue v. Crane Company. Good morning, Your Honors. I may please the Court. I'm Mike Ross on behalf of Appellant Cranco. Your Honors, if I may, I'd like to start with one brief procedural point before I jump into the substance of my argument, and that is that as I was doing my final preparations yesterday evening, I realized that the Williams v. Todd shipyard case that we cite in both our opening brief and reply brief is not presidential authority under Local Rule 47.5.4 of this Court. And I apologize for that mistake. We shouldn't have cited it in our briefing, and I wanted to let the Court know we're not relying on that opinion. All right. We'll ignore it. Turning to the substance, Your Honors, Cranco removed this action under 28 U.S.C. 1442a.1, and everyone agrees that statute has to be interpreted broadly. In order to remove this case successfully, Cranco had to show, among other things, that there was a causal connection between the plaintiff's claims and the actions that Cranco took at the direction of the Navy. I think this appeal boils down to one question, did Cranco do that? And we submit the answer is yes. Now, I don't think there's any dispute here as to either the nature of plaintiff's claims or the actions that Cranco took that are the subject of those claims. Plaintiff asserts claims, product liability claims, based on two theories, failure to warn and design defect, the allegation being that the use of asbestos materials in Cranco's valves, that's the equipment Cranco sold the Navy, and on the valves, constituted a defect, made them unreasonably dangerous, and that the valves should have had a warning about the use of those asbestos materials. Now, as far as the actions of Cranco that are at issue here, there's no dispute that Cranco supplied valves to the U.S. Navy during the World War II era and for many years thereafter, and that's when these ships, the ships that Mr. Zeringue or Zering served on were constructed, I think two were constructed in 1945 and one in 1946. There's no dispute that some of those valves, at the time Cranco shipped them to the Navy, had asbestos components in them, specifically a gasket and a piece of what's called stem packing. Some of those products contained asbestos, some did not. Cranco supplied both types to the Navy. There's also no dispute that the Navy, upon receiving these valves from Cranco, often or at times applied other asbestos products to them, in pipelines in its ships. Finally, there's no dispute that at this time period these valves wouldn't have had any type of warning or caution relating to the use of asbestos. Now, Cranco's, so I think the appeal boils down to, under the causal nexus element, was the Navy involved in those actions? And we believe the answer is absolutely it was. Cranco's theory of the case, which under Jefferson County v. Acre has to be accepted at this stage, at the jurisdictional stage, is that regardless of the valves Mr. Zeringue encountered, the Navy would have exercised extensive supervision, direction, and control over them. But you said two valves, two kinds of valves were supplied, some with asbestos and some without. That's right. What is the evidence as to who made the decision as to whether it would have asbestos or not? The evidence is, Your Honor, the Navy absolutely made those decisions, and that's what I was going to turn to. First. That was in the design specs, right? That's exactly correct. That's exactly correct. Two points. One, as far as who made the decision to put asbestos on the valves after installing them, that was completely the Navy's decision. I mean, we produced evidence that Cranco had no say in that whatsoever. That comes from the testimony of our expert witness, Admiral Sargent. Second, as far as whether the valves as supplied contained asbestos components, our evidence and affirmance are that the Navy issued detailed military specifications. It started doing that prior to the World War II era, at least by the 30s, and that these specifications governed all of the valves that Cranco supplied the Navy. Now, the specifications changed somewhat over the years. We've provided the district court with several exemplars of them, but they all had the same basic characteristics. The design of the valve was dictated, the materials that were to be used to construct it, the method of construction, the testing that it would undergo once the Navy got it, and also the two aspects of the valves that Mr. Zerenge, that Mr. Zerang claims were defective. The Navy specs dictated the type of components to be used in the valve, whether asbestos or non-asbestos, and the product literature, labeling, and warnings that were to be supplied with the valves. The valve had an identification plate that had certain information. The specs said, you shall put this information on the plate. And that's all in the record? Yes, it is, Your Honor. Yes, it is. That's right out of these valve exemplars, and Admiral Sargent in his affidavit discusses this at length. The Navy also required equipment makers like Cranco at times to supply manuals with the valves, and then it dictated the contents of the manuals. I looked at some of the record. My eyes couldn't let me read it all. Sure. But I only saw asbestos, the words asbestos on a few pages of the specs. That's right, Your Honor. I mean, it would be, I think, if I can give the Court an example, for instance. The specs from the 1938 valve specification, for instance, the spec tells Cranco or tells the valve manufacturer that the bonnet gasket in that particular valve was to be made of metal. That's ROA-44. There are other specifications that would say in the same spot, this one has to be asbestos. I think the 19 — another of the 1938 exemplar specifications we supplied incorporates the specification for asbestos packet. The testimony from our Navy witness would be, well, that's a direction of Cranco to supply asbestos materials with that. Oh, it wouldn't have asbestos unless it was specifically in that asbestos. That's right. Whatever the specification said. If it said use another type of gasket, some of these were made of metal, then that's what Cranco would have supplied. The testimony from our expert Navy witness is, whatever these specs said, that's what you had to do, otherwise the Navy wasn't going to accept the valve. So, Your Honors, we believe that the evidence of these specifications, the evidence that the Navy itself installed asbestos on these valves and that it governed labeling, literature, and warnings is more than sufficient to satisfy the causal nexus element. I understand right now we're deciding or appealing the issue of where should it be in State court and Federal court. Absolutely. But has any effort or any discussion been made about bringing, pleading the government or the Navy into this case? Your Honor, I'm not an expert on that, but I believe that there are some decisions from the 1980s where makers of the insulation products that were installed on the Navy pipelines, particularly the Johns Manville Company, tried to plead the Navy into some asbestos claims. And I believe there is Federal precedent that the foreign, the sovereign immunity, the Navy has sovereign immunity for those types of claims. You cannot bring the Navy into a claim like this. And then Johns Mansfield went bankrupt. That's exactly right, Your Honor. And Johns Manville is not here anymore, so instead of suing Johns Manville for insulation, you sue the maker of the valve that the insulation went on. That's exactly right. You just want government contractor immunity. That's the Federal defense that we will assert is the government contractor defense under Boyle. That's why you're willing to admit all this asbestosis situation. There's no – I mean, we don't agree that the plaintiffs will argue that the asbestos gaskets and packing crank are supplied were dangerous. We don't think they were. I mean, they've been scientifically tested. That's a separate issue. There's no dispute that some of these valves had asbestos in them. I mean, there's – that's – we're not disputing that at all. Is there evidence that he was exposed to asbestos through other – I know there are a lot of other defendants. Is there other times or places where he was alleged to have been exposed to asbestos? No, Your Honor. I don't believe that there's any allegation beyond Mr. Zerang's work in the Navy. He served in the Navy from, if I'm recalling correctly, 1952 to 1960 on three different ships. And I think the claim focuses solely on that time period. I'm not aware if there's any evidence of him being exposed in, for instance, a refinery or some later employment. Your Honors, as we pointed out in our briefing, Cranko and several other equipment companies that are similarly situated, sold equipment to the Navy, have briefed this issue and presented this issue to three other circuit courts of appeals. That's the Ninth Circuit in the Laity case, the Second Circuit in the Cuomo case, and the Seventh Circuit in the Ruppel case. And each of those courts held that allegate averments and evidence that are not only substantially similar, but in Laity and Cuomo, virtually identical to that submitted here, established the causal nexus element and a colorable Federal government contractor defense. And we believe that that's — those conclusions are absolutely consonant with this Court's precedent. If I can, very briefly, Your Honor, turning to where I think the district court may have gone wrong here, I think the district court just applied a too stringent version of the tests that are applicable under 1442. You know, if you're going to — if you're going to have an intention that the statute be interpreted broadly in favor of removal, well, how do you do that? You only require a colorable defense, not an airtight defense, not a defense that's going to win on the merits, necessarily. Ginsburg. What's the burden of proof? Waxman. The burden of proof, Your Honor? I think that we have the burden certainly to make allegations that, if accepted, would constitute a colorable Federal defense and meet the causal nexus prong. So we have to come forward with allegations. Whether we have to provide evidence in support of them, there is authority going both ways. You know, I like to think that the answer is no, because 1446 does not require evidence to be attached to a notice of removal. I don't think it's an issue the Court has to reach here, because we did supply a significant amount of evidence. So did it reach the preponderance of the evidence? Absolutely. Absolutely, Your Honor. And the district court — one last thing I'd point out. The district court actually said in its opinion that Cranco asserted in its view a plausible Federal defense. And I think that's important, because the Seventh Circuit, in a number of cases, has noted that the — has used the word plausible as a synonym for colorable. So if you can assert a plausible defense at this jurisdictional inquiry, you've passed. You should be in Federal court. The district court remanded this case even after finding that Cranco had a plausible defense. And I don't think that's right. Whether this defense will ultimately succeed on the merits, it should not be the question at this stage. And unless the Court has any further questions, I'll wait rebuttal. All right. Thank you, sir. Ms. Woodward. Good morning, Your Honors. Margaret Woodward for Howard Zerang with me, my colleague Jenny Deasy. Yes, the officer removal statute is to be broadly construed. No, Crane doesn't have to prove its case to establish a colorable defense. Yes, the bar is set low to establish causal connection, but there is a bar. Crane does have the burden of proving it. And we contend that it did not prove it, either with respect to showing government specifications for the use of asbestos or government control over the warnings. And it's important to get into the evidence specifically to talk about how it failed in that burden. First of all, I'm surprised Mr. Ross has argued entirely outside of the record this morning in saying that the ships were constructed in 1945 and 1946. We have nothing in the record to say that. Nowhere. He says that there's no dispute that asbestos was put on the outside at the Navy's decision. There's nothing in the record about that, nothing at all. And I'm going to get to what is in the record and address specifically where I think they fell down. First, with respect to Crane's use of asbestos in manufacture, I'm glad he withdrew the asbestos. As he pointed out, that's irrelevant and it's a misstatement of the holding of what was supposed to be this Court. But we don't need to look at a district court decision in Houston in 1997, because we have the Supreme Court in Watson v. Philip Morris in 2007, a case not cited in either party's appellate briefs. I apologize. I want to read to you directly now. The words acting under are broad and the statute must be liberally construed, but the term is not limitless. The fact that a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail does not bring that company within the scope of the statute and thereby permit removal. It further said regulation of inactivity doesn't authorize removal no matter how extensive. And as the Supreme Court said later in the case of Correspondence Services v. Malesko, to satisfy that burden of proof, a contractor has to show that the government directed the contractor to do the very thing that is the subject of the claim. In this case, that very thing is the use of asbestos. It is the use of asbestos that Mr. Zerang claimed damaged him. And that's where Crane has to satisfy that the government directed its actions. Now, are we talking about satisfied to win their case or satisfied to bring this case in federal court? No, Your Honor. You make a very good point. And I don't want to confuse what they have to do to establish a colorable defense and what they have to do to establish causal nexus. Remember, those are two discrete issues. And causal nexus is what establishes acting under a Federal agent. And that is what the Constitution requires. That's not just a statutory jurisdictional requirement. It is a constitutional requirement that there must be that acting under element. And causal nexus speaks to that. Now, looking to their evidence, they did not make that crucial showing here. They offered first the affidavit of an environmental safety expert, Mr. Pantolioni, who says Crane operated pursuant to specific military guidelines. Again, that's just what the Court in Watson said would not be enough in and of itself. It can't just be regulated by contract. You've got to go to the specific damaging part. And in this case, that's asbestos. Pantolioni doesn't speak to that. He does provide, as my colleague pointed out, examples. But his examples are from 1938 and 1978. He made no effort whatsoever, nor did any other expert whose affidavit you have on this record, to tie the 1938 or the 1978 milspecs to Mr. Zorang's period of service, which was from 1952 to 1956. Now, even assuming that those facially irrelevant 1938 milspecs may have something, anything to do with this case, they do not. Sotomayor, what does he allege? What ships does he allege he's on? Your Honor, it is in his petition. We have outlined it in our brief. I don't — I can't recall them. You specified specific ships. We specified — Do we know when those ships were built? That's not in the record. Crane says it has information about it. We didn't have information about it. And we don't know, and that is outside of the record. We do not know. Well, let me ask you this. Is there any evidence that the milspecs that were provided were aberrant, that the Navy — is there any evidence that the Navy ever deviated from the way that it communicated with contractors? In other words, did they use milspecs or not? Is there any evidence that the Navy never only got down to this specification level in these two isolated incidents? This is important, Judge, because the milspecs were rolled over year after year after year, and they changed. Every iteration of the milspecs was different from the prior. So you have the milspecs. We have the 1938 ones. Well, how do you know they change year to year unless you have them? I'm just asking. It's Crane's burden of proof. You just said they rolled over. How do you know that? Well, because they've given us several of them. And if you look at the later ones, it says this supersedes the milspecs from such and such a year. Okay. Is the level of specificity any different? Yes. Okay. Quite different. And that's what makes their use of these generic milspecs a problem. But I want to talk about the 1938 ones, because they're the only ones that we have that could have applied. 1978 is 20 years after Mr. Zerang's service, which concluded in 1956. So the only ones that might have applied would have been the 1938 ones, but I believe they're facially irrelevant. And if you look at the 1938 milspecs, they are, as Crane says, extremely specific, but not about asbestos. The only mention of asbestos in the 1938 milspecs relates to packaging for inspection. That's what they said. They are also extremely specific about the materials to be used for the parts at issue. Extremely specific. They say, you've got to use nickel for this one, copper nickel alloy for this one, steel for this one, gun metal for this one. They have to be threaded in this way. They have to be this size. There was no mention of asbestos with regard to the manufacture for shipboard use. They also say that these parts have to withstand certain pressures and certain heats. And the reason this is important is because Boyle, the case from which Crane's federal defense derives, says if a government contract specifies that you have to withstand certain heats or a part has to stand up to certain use, but does not say how you get there, there's no federal defense because there's no conflict between what the contract requires and what state law requires. The contract required nickel, copper, gun metal. State law requires don't use hazardous materials. No conflict, no federal defense. Now, they went further in their showing, and my opponent referred to a boss's expert, but he comes no closer. He says in an affidavit that was prepared for use in seven cases, years ago, out of New York and Pennsylvania, that the record examples of the mill specs for the types of valves at issue in these cases, meaning the seven to which his testimony relates, is attached as Exhibit A. It's not attached to our record. We don't have it. Crane omitted it for reasons of its own. Then Sargent says, so where flange gaskets contained asbestos, it was because the Navy required it. Crane tried to import that statement by Sargent into this case, but Sargent was talking about other ships in six other cases 10 years after Mr. Zerang's service. We objected strenuously to that in our brief. And Crane came back. Sotomayor, excuse me. The Sargent affidavit was talking about ships that were built after your client's tour of duty or whatever you call it. That's what Sargent's affidavit is directed to. So it doesn't refer back to prior construction specs? There are places where he speaks generically in broad terms. And, Judge, I'm going to get to that in a minute, but I want to refer to Crane's brief where it says, The district court and plaintiff appear to demand a level of specificity from Crane that is virtually impossible to meet given the vague nature of plaintiff's allegations. Now, we gave them the damage-causing material, asbestos. They've acknowledged they only prepared these pipes and valves. And we gave them the ships on which he served and the dates on which he served. So did we give them an impossible burden? Admiral Sargent didn't think so. Here's what he said in a paragraph of his affidavit to which Crane does not refer this Court, and I'm going to quote from it. It is at page 128 to 129 of the record. I didn't find it myself until I reread all 800 pages of this telephone book in preparation for this argument. It says, In order to ensure effective, efficient, and safe operation of its warships, the Navy, since at least World War II, has developed and maintained extensive documentation for each ship class and individual ship. He was able to reach into what he described in that paragraph as this extensive library of documentation to pull out the milspecs and the contracts related to the cases to which this affidavit relates. But we don't have anything for Mr. Zerang's boats or his case. And so what Crane tries to do is have you extrapolate from what Sargent said in his case, which was a satisfactory showing in that case, based on documentation that was provided, but which has been omitted from this record. And this Court said in Bartel, you know, it may be difficult for you to meet the legal requirements and provide us with the contract, but that's what the law requires that you do, to establish the specificity that the law requires. In this case, Crane's own expert has said it wouldn't have been difficult for them to do, but they didn't do it. Did you depose Mr. Sargent, whatever he is, David Sargent? We did not. Because perhaps if you would have deposed him and done a request for production of documents, he would have had to have produced what you're looking for now. Judge, I strongly believe that we did everything we needed to do, the 800 pages that Crane supplied as meeting its burden of proof. Yeah, but now you're saying it wasn't relevant. So I'm saying if you have this witness who says, hey, I've got a library of documents and specs, give me a year, give me a ship, I'll go look it up. It's not our burden of proof. It's Crane's burden of proof. Well, you want to stay in State court. You have to defeat this allegation of government contractor immunity. I don't believe that when they have not carried their burden of proof, we have to show that their defense is erroneous. Well, apparently the district court disagreed. I'm sorry? Apparently the district court disagreed. No, the district court ruled in our favor. The district court ruled that this evidence was incompetent to satisfy Crane's burden of proof. It was not sufficient. And we believe that it was deficient. Judge Zaney held that it was deficient. You're saying deficient. Okay. That it was evidentially deficient, and I am here defending that decision by Judge Zaney, which I think is absolutely correct. I don't want to get into more of the details. You did give them ship by ship. Yes. And dates that he served. Yes, we did, Your Honor. I wasn't aware of that. It's in the petition, and we listed it in one of our briefs. Probably our serve reply. Okay. Is the complaint just exclusively to exposure to asbestos from these Navy ships? The complaint addresses exposure to asbestos, but does give where the plaintiff believed the exposure occurred. And it is specific. And as my opponent has said. Does it go outside of the Navy ships, or is it just exclusively to the Navy ships where the exposure took place? He believes that he was exposed to asbestos in other environments as well. But Crane's involvement in this case relates only to its manufacture for the Navy ships and the warnings that it provided for the parts it manufactured. So that's all we're talking about on this appeal. Now, I want to go back to the evidentiary issue, because that's what I think we're really here about. We're here about rank hearsay, speculative opinion testimony by Admiral Sargent, which in his original affidavit was supported by documentation which has been excised from our record. And we're not calling for a full Daubert-type analysis in this case, but we are dealing with experts. And I think an adequate test was set up by the Supreme Court in William v. Morgan when it said a party seeking the benefit of removal must be candid, specific, and positive. And it's showing. And it further said that the requirements of specificity must be tailored to fit the facts of each case, not other cases. That's what we've got. Affidavits prepared for other cases. Based on hearsay and double hearsay, because the documents are missing. And it was Crane's burden of proof. They could have produced what they needed to produce, but they didn't. This is what has been called strategic omission, something that Crane has been castigated for in other cases. You might want to take a look at Wood v. Crane Company at 764 F. 3rd 316. Now, I've left myself very little time to get on to the failure to warn evidence. But in broad strokes, it suffers from the same deficiencies in incompetent evidence and generic speak. This Court held in Kerstetter, if the contractor shows the government is involved in the decision to give or not give a warning, he's met the burden. Crane says, again, through Sargent and Lehman, that the mil specs directed exactly how parts have to be labeled. And if you look at the mil specs, probably irrelevant from 1938, nobody has tied those mil specs to these boats. It says at page 67 of the record, yeah, you have to precisely label the part with name, size, manufacturer. It doesn't say anything about asbestos warnings. And so, again, that's specificity that is not in conflict with the state court requirements of warnings of hazardous materials. And in that instance, Boyle says there's no Federal defense. Now, Sargent and Lehman are not. Kagan. That is at 551 U.S. 142. I'm sorry? Yes. Yes, I believe so, Your Honor. All right. Thank you. Thank you. Good morning again, Your Honors. A few brief points here. I am admittedly very biased, but after listening to counsel, I cannot help but think there is a huge factual dispute here, and that is exactly why this case should stay in Federal court. I'm glad that counsel cited Willingham v. Morgan, because Willingham v. Morgan stands for exactly that proposition. In Willingham, you've got the prisoner saying the warden was on a frolic of his own when he hurt me, and the warden says, no, I wasn't. I was discharging my Federal duties. Willingham said, in that case, this stays in Federal court. The factual dispute has to be resolved through the Federal court proceedings, not at the jurisdictional stage. As far as — oh, and I would like to offer the Court one quote from the Cuomo decision that we cite in our brief from the Second Circuit. And I think this captures perfectly what should and should not go on at this jurisdictional inquiry stage. And this is from page 116 of Cuomo, 771 F. 3rd, 113. The inquiry on the motion to remand is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice pre-discovery to determine the threshold jurisdictional issue. A merely colorable defense is sufficient to assure the Federal court that it has jurisdiction to adjudicate the case. I think that's absolutely right. The Watson case, Your Honors, was the tobacco companies. The tobacco companies were trying to remove cases. And they said, well, the government is regulating us. They're regulating everything we do. We should get to remove. And what the Supreme Court held in Watson was, no, merely being regulated, a member of a regulated industry is not enough. A government contractor is someone who helps the government do something that it needs to do. The government does not need cigarettes. The government needed valves to make these ships go through the water and fight world war II. What about the argument that the specs only, and that's what I read, deal with packaging of asbestos. They do not say that you have to put asbestos inside the valves. I'm not sure that they deal with, I don't know how they deal with the packaging of asbestos, Your Honor. One of the asbestos products used in the valve was called packing. Some of the specifications incorporate, the valve specs incorporate the spec for asbestos packing. Packing was like a piece of rope that contained asbestos that would go inside the valve. So it's not the packaging on the end? No, no, no. Asbestos packing is not a piece of, it's not packaging. And the other component, the gasket that I talked about earlier, again, the specifications do dictate exactly what that had to contain. Well, do records exist for the ships that they specified? You know, I don't know, Your Honor. They're not in this record. And I want to touch on that argument, because Counsel Spindler ---- How could you not know if you're defending this case? Well, at this point, Your Honor, all we have is a complaint. So we remove the case asserting our government contractor defense. But you went to all the trouble to get these affidavits about other ships. These affidavits, Your Honor, are about every ship. They're preexisting, I know. The thing is, though, the notion that these affidavits are specific to other ships is wrong. I mean, these affidavits are specific to Cranco's relationship to the U.S. Navy. But they were specific to seven other cases. They were originally executed in other cases. But we've supplied the same affidavits in many other cases, including the Second Circuit. Do you have the specifications for these ships or not? I'm sure we could. Not in this record, Your Honor. Not in this record. I mean, I'm sure we could find the specs that were, that applied when the valves were sailed, were sold. But that raises a problem. We don't know what valves Mr. Zerenge worked on, Mr. Zereng worked on. These are the ones. Well, all you'd have to show, it seems to me, that they were on a ship he worked on. Just give you the specs for that ship. One ship. Here's the thing, Your Honor. Is it the specs that apply to the valves in the engine room or the boiler room? It doesn't. I don't think it makes any difference for jurisdictional purposes. Just show that you had one valve with asbestos, and the government said, we want that valve for this ship. And y'all didn't do that, it doesn't seem like. Well, that's not in this record, Your Honor. But our theory of the case, again, which I believe the Court has to accept at this point, is that it doesn't map, that these, the exemplary specifications. What evidence is there that there was any government document or phone call or anything else that said, I want one valve that has asbestos in it for one ship that he was on? I mean, how do we know that the government said, put asbestos valves, even one asbestos valve in one ship that he was on? Is there any evidence where we can rationally draw that conclusion? Here's the best evidence we have, Your Honor. Mr. Zerang claims he was exposed to asbestos used in these valves. Our evidence from our corporate witness and our expert is that that could not have happened unless the Navy directed the use of asbestos. We've provided exemplary specifications that show that the Navy did direct the use of asbestos in certain valves. That's our theory, Your Honor. That's the best we have. Well, what if they didn't specify it in the design specs, but they approved the valves that, in fact, contained asbestos? Wouldn't that be the same thing? Absolutely. And if they installed asbestos on the valves themselves? Just because it's not specified in the design. Exactly, Your Honor. Exactly. Where's the proof that they approved, the government approved, in one or more of these ships, the valves you used? Is there some evidence? The valves should have used asbestos? No. The valves that were actually provided by your client for these ships, is there any evidence that the government approved it? Maybe not. Yes. Okay. Your Honor, again, there's nothing specific to these ships in the record. The evidence could be offered. Is that evidence in the affidavit? Is it Admiral Sargent's affidavit? Is that what you're part of your answer? Yes. That's general to all valves Cranco supplied the Navy. Our best evidence is that regardless of the valves, when Cranco sold a valve to the And I would again refer the Court to the Cuomo case that dealt with exactly this issue and said customary specifications are sufficient here. And that's what we've given the Court. All right. Thank you. Thank you, Your Honor. Thank you for your argument.